**BELLSOUTH ADVERTISING &
PUBLISHING CORPORATION
Plaintiff,**

v.

**LAMBERT PUBLISHING and Steve
Lambert Defendants.**

**No. CIV. A. 99–0168–CB–S.**

United States District Court,
S.D. Alabama,
Southern Division.

March 16, 1999.

Morris Wade Richardson, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for plaintiff and counter–defendant.

Mark Vanderbroek, Troutman, Sanders, LLP, Atlanta, Ga, John Bollar, Troutman, Sanders, LLP, Atlanta, Ga, Jerry A. McDowell, McDowell Knight Roedder & Sledge, L.L.C., Mobile, AL, for defendants and counter–claimant.

## ORDER

BUTLER, Chief Judge.

This matter is before the Court on Plaintiff's Application for Preliminary Injunction (Doc. 2). Also before the Court is Defendant's Motion for Preliminary Injunction (Doc. 14). Having held a hearing and heard testimony from the parties and witnesses called on behalf of each, and having considered Plaintiff's Memorandum. in Support (Doc. 9), Affidavits in Support (Doc. 8), and Supplemental Brief in Support (Doc. 12) as well as Defendant's Brief in Opposition to Plaintiff's Application and Brief in Support of it Motion (Doc. 12) and Motion for Preliminary Injunction (Doc. 13), the Court finds that neither party is entitled to a preliminary injunction and therefore both Motions are hereby **DENIED.**

## BACKGROUND

This case arises from the rough-and-tumble world of telephone book and yellow pages publishing. Plaintiff, a wholly owned subsidiary of BellSouth (one of the so-called "Baby Bells"), has held a monopoly, or near monopoly, on telephone book publishing and distribution in most markets. Lambert Publishing and its owner, Steve Lambert, entered into the fray by publishing "overlay" telephone books. These phone books encompass a wider geographic area than BellSouth's and typically include calling areas served by Bell-

South and also areas served by other local phone companies. The result is that Lambert's telephone book can be used over a wider calling area than BellSouth's book.

Lambert and BellSouth wage their battle, not over the utility of their respective books, but, rather, over advertising. Both fund their operations by selling advertising in the yellow pages and the amount they charge depends, in large part, upon how many people actually use their books and how often they use it. In practice, both companies deploy armies of sales representatives armed with survey data indicating that their phone books are used more often by more people than the competitor's books. Businesses then decide whether to advertise in one, none, or both of the books—it is certain that a company could take out ads in both books—in order to maximize the company's exposure and thereby increase its business volume.

BellSouth seeks to enjoin Lambert from making certain statements in Lambert's print and radio advertising campaign. Additionally, BellSouth requests that the Court enjoin Lambert's salespeople from making certain representations regarding BellSouth and the BellSouth Yellow Pages in their sales presentations to potential customers. Conversely, Lambert seeks an injunction against BellSouth's making statements regarding the Lambert Best-Talk directory in its advertising campaign and against BellSouth's salespeople making representations about the BestTalk directory in their own sales presentations.

### DISCUSSION

■ The grant or denial of a preliminary injunction is a decision within the discretion of the district court. *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983). For preliminary injunctive relief to be warranted, the district court must find that the movant has satisfied four prerequisites: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest. *Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993); *Carillon Importers, Ltd. v. Frank Pesce International Group Limited*, 112 F.3d 1125, 1126 (11th Cir.1997); *see also United Industries Corp. v. Clorox Co.* 140 F.3d 1175, 1178–79 (8th Cir.1998). No single factor is dispositive, and each factor must be considered to determine whether the balance of equities weighs toward granting the injunction. *United Industries v. Clorox*, 140 F.3d at 1179.

### Likelihood of Prevailing on the Merits.

■ The Lanham Act was intended, in part, to protect persons engaged in commerce against false advertising and unfair competition. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:25 at 27–40 (West Group 1997). In particular, the Act prohibits commercial advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic origin of the advertiser's or another person's goods, services, or commercial activities. *Rhone–Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow. Inc.*, 93 F.3d 511, 514 (8th Cir.1996) *citing* 15 U.S.C. § 1125(a)(1)(B); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir.1993)(*en banc*).[1]

---

1. The text of section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), provides in pertinent part:

 (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false des-

 ignation of origin, false or misleading description of fact, or false or misleading representation of fact, which ...

 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

To prevail on a false advertising claim under that act, BellSouth must prove:

(1) that the defendant made a false representation of fact about its own or another's product or services in commercial advertising or promotion;

(2) that the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) that the deception is material, in that it is likely to influence the purchasing decision;

(4) that the defendant caused its false statement to enter interstate commerce; and,

(5) that the plaintiff has been or is likely to be injured as a result of the false statement be a casually related diversion of sales or by a lessening of the goodwill associated with its products.

15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997); *Ditri v. Coldwell Banker*, 954 F.2d 869, 872 (3rd Cir.1992) *quoting U.S. Healthcare v. Blue Cross of Gr. Philadelphia*, 898 F.2d 914, 922–23 (3rd Cir.1990), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33; *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C.Cir.1990); *and Tire Kingdom, Inc. v. Morgan Tire and Auto, Inc.*, 915 F.Supp. 360, 364 (S.D.Fla.1996); *Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3rd Cir.1994).

■ The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. *see Southland Sod v. Stover Seed*, 108 F.3d at 1139; *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2nd Cir.1997); *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir.

1992). A third category is one generally known as "puffery" or "puffing." Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." *Southland Sod v. Stover Seed*, 108 F.3d at 1145; *see also Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3rd Cir.1993). Vague or highly subjective claims of product superiority generally will fall within the category of non-actionable puffery. *Southland Sod v. Stover Seed*, 108 F.3d at 1145; *see also Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir.1990)(advertising that merely states in general terms that one product is superior is not actionable). But, false descriptions of specific or absolute characteristics of a product and specific, measurable claims of product superiority based on product testing are not puffery and are actionable. *Southland Sod v. Stover Seed*, 108 F.3d at 1145; *Castrol v. Pennzoil*, 987 F.2d at 945. Where, however, the advertising claim is shown to be literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public. *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2nd Cir.1991) *and Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2nd Cir.1992).

BellSouth complains of two separate types of allegedly false advertising by Lambert: (1)representations in print and radio ads purporting to show greater public preference for Lambert's telephone directories and (2)representations by Lambert sales representatives in face to face meetings with potential advertisers. Because the legal standards differ for each allegedly false representation, each shall be discussed in turn.

**a. Print and Radio Advertising.**

■ In its print and radio ads touting the merits of the BestTalk directory, Lam-

shall be liable in a civil action by any person who believes that he or she is or is

likely to be damaged by such act.

bert made claims that the BestTalk directory is the most widely distributed telephone directory in its markets. The truth of this statement depends on one's meaning of the word "widely." BellSouth contends that the statement is deceptive because BellSouth actually distributes more directories than Lambert does.[2] Lambert, on the other hand, contends that the statement is literally true because it distributes directories over a wider geographic area than does BellSouth. Both statements are patently true and the Court will not engage in a debate over which meaning reflects metaphysical truth.

Lambert's statement does not implicitly convey a false impression such that it would constitute a false statement. While linguists and etymologists may debate the relative merits of using "widely" in the numerical sense as opposed to using "widely" in the geographic sense, the usages themselves are not so ambiguous as to make either usage inherently deceptive. Where, as here, a term is used in a manner that reflects a different, though equally truthful and accurate, meaning, such usage cannot give rise to an action under the Lanham Act.

Moreover, absent a showing of absolute falsity, it is absolutely essential for the Plaintiff to show actual deception by using reliable consumer or market research. *United Industries v. Clorox,* 140 F.3d at 1183; *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297–98 (2nd Cir.1992). It is not for the Court to determine, based solely on some intuitive or visceral reaction whether an advertisement is deceptive. *American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1443 (3rd Cir. 1994). Plaintiff cannot obtain relief simply by arguing how consumers *could* react, rather, it must show how consumers *actually* react. *Id., and Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 735

F.Supp. 597, 600 (D.Del.1989), *aff'd,* 902 F.2d 222 (3rd Cir.1990). BellSouth has come forward with no such study and therefore, cannot succeed on the merits as to Lambert's claim that the BestTalk directory is more widely distributed.

■ The second statement which BellSouth complains of relates to the results of so-called possession, preference, and usage studies conducted by each company to determine public opinion regarding its directory versus its competitor's. In its print and radio ads; Lambert claims that "90% of the people regularly use the BestTalk phone book at home and work." Lambert supported its claim by submitting survey data regarding usage in Houston–Peach County and Macon, Georgia in 1993, Houston–Peach County in 1994, Auburn/Opelika, Alabama in 1996, and Macon in 1998. Some of these studies, among others, were conducted by an independent survey and marketing organization, Ver-A–Fast, Inc., and some were conducted by Lambert using Ver–A–Fast's questionnaire. Additionally, Lambert studied usage by monitoring incoming calls to a business in Macon which had one phone number listed only in the BellSouth phone book and another listed only in the Lambert phone book.

Lambert conducted its studies in a manner not wholly consistent with the highest scientific principals. For many of the studies, Lambert relied on phone surveys conducted by its own sales representatives. Their method of conducting the questioning seemed rather amateurish and might tend to skew the survey results toward those who both possess and use the BestTalk phone book. Therefore, Lambert conducted its surveys in order to obtain a favorable result, and it was that result that formed the basis of Lambert's advertising claim.

BellSouth, on the other hand, commissions surveys through Dr. Robert Morgan

---

**2.** It is worthy of note that the Court cannot determine the precise number of directories distributed by BellSouth for the numbers vary depending on the report. Nevertheless, BellSouth surely distributes more directories than Lambert and the margin is, in the end, of little moment.

and his company Strategic Metrics, Inc. Clearly the Strategic Metrics studies are conducted with utmost care to ensure randomness and are geared to generate responses that will accurately reflect public opinion in the survey area. However, it is clear from Dr. Morgan's testimony that the survey area for any given study would be limited to those persons who received a BellSouth book. The logical conclusion is that Morgan did not survey people who did not receive a BellSouth book and therefore the surveys he conducted would tend to exclude many, if not most, of the recipients of the BestTalk directory. BellSouth commissioned its studies with exactly the same purpose as Lambert—to obtain a favorable result, a result which forms the basis of BellSouth's allegation that Lambert's statements are false.

BellSouth points out that, in the context of comparative advertising, where defendant's ad either implicitly or explicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden of showing literal falsity or deceptive falsity either by affirmatively showing that the defendant's product is equal or inferior to the plaintiff's product or by showing that the defendant's tests did not actually establish the superiority of defendant's product. *Castrol v. Quaker State,* 977 F.2d at 63; *citing McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2nd Cir.1991). Where the defendant's claim either explicitly or implicitly relies on test data, plaintiff can meet its burden by demonstrating that the tests were not sufficiently reliable to permit a conclusion that the product is superior. *Castrol v. Quaker State,* 977 F.2d at 63 (citations omitted).

However, the statement which BellSouth contends is false—Lambert's claim that 90% of the people regularly used the BestTalk directory—does not claim superiority. Quite simply, Lambert is not saying its book is better than BellSouth's, but rather, it is saying that those people who have the BestTalk directory use it. There is no implication that BellSouth's book is inferi-

or and therefore, BellSouth's contention that Lambert's survey data is flawed is no grounds for a finding that the statement is literally false.

In order to prevail, BellSouth must come forward with its own data to show that Lambert's statement is either untrue or deceptive. The survey data submitted by BellSouth does neither. Instead, BellSouth's data suffers from much the same flaws as the less professionally done Lambert studies—neither study constitutes a thorough examination of the entire marketplace. Lambert surveyed people who possessed and used his book; BellSouth surveyed people who received its book. While there is, of course, some overlap between the two, BellSouth's study did not reach those people outside of its distribution zone who did receive a BestTalk directory. For that reason, BellSouth's study cannot be employed to show that Lambert's statement is either literally false or true but deceptive.

### b. Representations of Lambert Salespeople.

BellSouth asserts that several practices employed by Lambert salespeople constitute false statements within the meaning of the Lanham Act. Generally, these practices or statements have been made in private, one-on-one discussions in which the salesperson was attempting to convince a potential advertiser to take out an ad in the BestTalk yellow pages. As a threshold matter, the Court must determine whether such statements constitute "advertising" and "promotion" within the ambit of the Lanham Act and then, as a secondary matter, whether such statements and practices are actionable.

■ Courts have noted that we should give the terms "advertising" and "promotion" their "plain and ordinary meanings." *American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.,* 820 F.Supp. 1072, 1077 (N.D.Ill.1993); *see also Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 236 (2nd Cir. 1974)("[N]otwithstanding that § 43(a) ap-

plies to a broad range of misrepresentations, it does not have boundless application ... but is limited to false advertising as that term is generally understood."). The courts are in agreement, however, that "the Act's reach is broader than merely the 'classic advertising campaign.'" *Gordon & Breach Science Publishers v. American Inst. of Physics*, 859 F.Supp. 1521, 1534 (S.D.N.Y.1994). In *Gordon & Breach*, the court summed up the principles found in the case law and the Act's legislative history as follows:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be:
>
> (1) commercial speech;
>
> (2) by a defendant who is in commercial competition with plaintiff;
>
> (3) for the purpose of influencing consumers to buy defendant's goods or services.

While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations

> (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Gordon & Breach*, 859 F.Supp. at 1535–36; *and Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1384 (5th Cir.1996). The *Gordon & Breach* Court provided an accurate and sound summary of the requirements for establishing "commercial advertising or promotion," and this Court sees no reason to depart from that definition.

 The first of BellSouth's complaints clearly falls within § 43's reach. Lambert salespeople regularly use a sales visual—a flyer or poster—which states that:

59.41% of users with a preference, preferred the independent publisher

| | |
|---|---|
| Independent Publishers | 59.41% |
| Utility Company Directories | 40.59% |
| 18.82% Diff. | |

The sales visual was produced by a trade organization, the Association of Directory Publishers and identifies several marketing organizations, including Ver–A–Fast, Statistical Research, Inc., and L.M.Berry as sources. Lambert added a statement identifying L.M.Berry as a BellSouth company—a statement that is entirely true. The visual does not identify the markets reflected in the survey data nor when the surveys were conducted.

Courts have held that sales visuals are advertisements within the meaning of the Lanham Act. *see e.g. Seven–Up v. Coca–Cola*, 86 F.3d at 1385; *American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.*, 820 F.Supp. 1072, 1078; *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 114 (6th Cir.1995); *Mylan Laboratories, Inc. v. Pharmaceutical Basics, Inc.*, 808 F.Supp. 446, 459 (D.Md.1992) *rev'd on other grounds* 7 F.3d 1130 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127

L.Ed.2d 658 (1994). But, the burden remains with the Plaintiff to prove the literal falsity of the statements in the visual or that the visual, while literally true, is misleading in context. *United Industries v. Clorox*, 140 F.3d at 1180; *Southland Sod v. Stover Seed*, 108 F.3d at 1139.

Plaintiff has come forward with no evidence tending to show that the statements made in the visual are themselves false. While the Strategic Metrics survey data on which Plaintiff relies may be accurate for those samples, any comparison to the ADP visual is inapposite—Plaintiff must come forward with evidence that the data in the visual is inherently false, that the data may not reflect the market in a particular area is insufficient to establish literal falsity.

Failing a showing of outright falsity, Plaintiff must come forward with evidence the advertising actually conveyed the implied message and thereby deceived a sig-

nificant portion of the recipients. *United Industries v. Clorox,* 140 F.3d at 1182; *William H. Morris Co. v. Group W, Inc.,* 66 F.3d 255, 258 (9th Cir.1995)(*en banc* ); *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297–98 (2nd Cir. 1992). Critical to such a showing is the message that is conveyed to the public. *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.,* 19 F.3d 125, 129–130 (3rd Cir.1994); *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 735 F.Supp. 597, 600 (D.Del.1989), *aff'd,* 902 F.2d 222 (3rd Cir.1990); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 922–23 (3rd Cir.1990), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). Public reaction is the measure of a commercial's impact. *Sandoz v. Richardson–Vicks,* 902 F.2d at 228–29; *American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1357 (S.D.N.Y.1976). The success of the claim usually turns on the persuasiveness of a consumer survey. *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer,* 19 F.3d at 129–130; *Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317 (2nd Cir.1982).

As before, in order to succeed on its claim of implicitly false or misleading advertising, BellSouth must show actual deception by using reliable consumer or market research. *United Industries v. Clorox,* 140 F.3d at 1183; *Johnson & Johnson * Merck v. Smithkline Beecham,* 960 F.2d at 297. The Court may not independently determine whether an advertisement is deceptive. *American Telephone & Telegraph Co. v. Winback and Conserve Program,* 42 F.3d at 1443. Simply put, BellSouth must show how consumers *actually* react to a statement. *Id., and Sandoz v. Richardson–Vicks,* 902 F.2d at 228–29.

Plaintiff has failed in its burden of proof. BellSouth has introduced nothing to indicate how any consumer—whether in the public-at-large or the advertisers being solicited by Lambert—reacted to the ADP

sales video. Absent such a showing, the Court may not find in Plaintiff's favor and therefore may not enjoin Lambert's using the sales visual in its presentations.

BellSouth also objects to specific statements made by a specific Lambert salespersons regarding the number of directories BellSouth would distribute in the Mobile market. The figures presented by BellSouth vary wildly and are, at best, projections. BellSouth has come forward with no specifics which would belie the figures used by Lambert's representatives (c. 185,000, 200,000, or 250,000). Rather, BellSouth's own projections—a publishing run of somewhat less than 400,000 copies with a retained inventory approximating 175,000 copies, leaving some 225,000 copies to be distributed—place Lambert's figures at least within the realm of credibility. Because Bell-South could come forward with no definitive proof that Lambert's estimates were either literally false or deceptive, the Court cannot, and will not, enjoin their use.

 Third, BellSouth argues that a Lambert salesperson's statement that BellSouth was going out of the Yellow Pages business is actionable under the Lanham Act. It became clear to the Court during the hearing that the statement was no more than the foolish remark of an overzealous salesman. Generally, a statement made by an individual salesperson to an individual potential customer is not actionable. *see e.g. Medical Graphics Corp. v. SensorMedics Corp.,* 872 F.Supp. 643, 650 (D.Minn.1994) *and Seven–Up v. Coca–Cola,* 86 F.3d at 1385. Given that, and given the fact that the Lambert salesperson who allegedly made the remark no longer works for Lambert, the Court need go no further. No injunction is called for.

 Finally, BellSouth requests that the Court enjoin Lambert from distributing certain form letters to businesses who advertise in the BellSouth Yellow Pages. These letters request that a BellSouth rep-

resentative re-contact the advertiser in order to revise the advertiser's marketing plan. These letters make no mention of Lambert or the BestTalk directory. The letters do not purport to cancel the advertiser's contract with BellSouth. Rather, the letters simply reflect a clause in BellSouth's standard contract which requires that any request for a change in an ad be in writing and they state that if no one makes contact, the advertiser will protest BellSouth's bills.

The gist of BellSouth's complaint is that, because some advertisers (the testimony reflected that there were only seven) send these letters in, BellSouth salespeople must waste considerable time and resources dealing with old customers when their time is better spent soliciting new customers. BellSouth, in essence, wishes this Court to strangle competition. In a free and open market, competitors compete for business. A free market requires constant maintenance of old clients while one searches out new business. This model is one that confronts every business of every size and BellSouth is no different. The Lanham Act prohibits false advertising, it does not prohibit dog-eat-dog, bare-knuckled, competition. For that reason, there is little likelihood that BellSouth will succeed on the merits.

For the foregoing reasons, then, the Court finds that BellSouth has failed to show a likelihood of succeeding on the merits of its Lanham Act claims. BellSouth has failed to show that any of Lambert's radio and print advertising statements were either literally false or literally true but deceptive. Additionally, BellSouth has failed to show that the sales visual used by Lambert's salespeople is actionable under the Lanham Act. Finally, BellSouth has failed to establish that the statements and practices of Lambert's salespeople constitute advertising or promotion such that a claim will lie under the Lanham Act. Therefore, it is clear to this Court that BellSouth has little chance of succeeding on the merits of its claim.

### CONCLUSION

 The remaining factors: the potential for irreparable harm, the balance of the harms, and the concerns of public policy do not tip the balance of the equities in BellSouth's favor. It is clear that a false or deceptive advertising statement will, *ipso facto*, demonstrate the potential for irreparable harm. *see e.g. United Industries v. Clorox*, 140 F.3d at 1183; *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2nd Cir.1988). However, absent a that showing, irreparable harm cannot be presumed where, as here, Plaintiff has not established any prospect of success on the merits. *United Industries v. Clorox*, 140 F.3d at 1184; *Sanborn Mfg. v. Campbell Hausfeld*, 997 F.2d at 489; *see also Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186, 192 (2nd Cir.1980) ("While proof of actual diversion of sales is not required for a § 43(a) injunction to issue, proof that the advertising complained of is in fact false is essential.").

Likewise, having failed to establish a likelihood of success on the merits, any risk that BellSouth will be harmed by Lambert's continued advertising and promotional activities is highly speculative and does not serve to tip the balance of equities in BellSouth's favor. Finally, while the public interest clearly favors enjoining false advertising, absent a more substantive showing that BellSouth has a viable claim, this factor simply will not justify the Court's issuing a preliminary injunction.

Because BellSouth has failed to demonstrate a substantial likelihood that it will succeed on the merits of its Lanham Act claim and because no other factor tends to show that a preliminary injunction is warranted, BellSouth's Application for Preliminary Injunction is hereby **DENIED.**

Lambert, following the hearing on BellSouth's Application for Preliminary Injunction, likewise requested a preliminary injunction against certain representations allegedly made by individual BellSouth salespersons. Because, as the Court found

above, the statements of individual salespeople to individual customers do not constitute advertising and promotion within the meaning of the Lanham Act, the Court need not examine the matter further. Lambert's Motion for Preliminary Injunction is hereby **DENIED.**