# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3376

_____

| | |
|---|---|
| Allsup, Inc., | * |
| | * |
| Plaintiff-Appellant, | * |
| | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Missouri. |
| Advantage 2000 Consultants Inc., a | * |
| Missouri Corporation; Richard C. | * |
| Smith, other, Pete; Terry L. Binder; | * |
| Robert V. Luetkenhaus, | * |
| | * |
| Defendants-Appellees. | * |

_____

Submitted: October 13, 2005
Filed:   November 16, 2005

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Allsup, Inc. (Allsup) sued Advantage 2000 Consultants, Inc. (A2K), Richard C. Smith, and Terry L. Binder alleging reverse passing-off in violation of 15 U.S.C. § 1125(a)(1)(A), false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), and eight claims under Missouri common law. The district court[1] granted the defendants'

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

motion for summary judgment on the federal claims and declined to extend jurisdiction to the state law claims. Allsup appeals only the grant of summary judgment on the false advertising claim. We affirm.

I

James F. Allsup founded Allsup in 1983 after working as an employee for the Social Security Administration (SSA). Allsup hired two other former SSA employees, Smith in 1987 and Binder in 1989. In 1995, Smith and Binder left Allsup to form A2K.

Allsup was created to provide long term disability (LTD) insurance carriers with a means to recover overpayment benefits received by their insureds from the SSA. Typically, disabled employees receive LTD benefits immediately from their insurance carrier. The employees may also file claims for social security benefits, but the SSA often takes up to one year to determine eligibility. If the employees are eligible, the SSA issues a retroactive lump sum to the employees to cover the benefits owed as of the day of the application. The SSA may also award benefits on a going-forward basis. The employees, however, cannot legally assign the right to receive this payment, which is owed by contract to the LTD carriers as an offset.

Allsup made available a system to assist LTD carriers recoup the money owed through a process known as "overpayment recovery." To effectuate the recovery, LTD carriers referred their insureds to Allsup, which required them to execute a pre-authorized electronic withdrawal of funds. These contracts allowed Allsup to transfer the money received from SSA back to the LTD insurers almost immediately after the insureds received their funds. Allsup claims to have spent more than one million dollars creating its particular system, known as "Seamless ORS," but A2K alleges other companies developed similar processes as early as 1991. The automatic withdrawals and transfers are accomplished through the use of an Automated

Clearing House (ACH) service. ACH services are commonly deployed to effectuate a wide variety of automatic deposits and withdrawals, including payroll deposits, payments of utilities and other bills, and other electronic funds transfers.

In late 2001 and early 2002, A2K was approached by CIGNA and two other insurance companies to submit bids for their overpayment recovery business. In putting the proposal together, A2K submitted draft versions of documents used in overpayment recovery. A2K also represented it could be operational by the time the carriers needed the service. At no point during this process did A2K represent its system as being fully operational. In February 2002, counsel for Allsup sent A2K a letter explaining Allsup was in the process of patenting its "Seamless ORS" system and threatening to sue A2K for continuing to develop an "automated over-payment recovery system." In an attempt to avoid litigation, A2K withdrew its bids and removed itself from the overpayment recovery market. In unrelated litigation,[2] representatives from A2K stated the company never entered the relevant market or had any plans to do so in the future.

Allsup alleges A2K, inter alia, falsely advertised its plans to enter the overpayment recovery market. Specifically, the First Amended Complaint alleges "A2K's, Smith's and Binder's statements about A2K's ORS capability . . . were false or misleading statements of fact about goods and services moving in interstate commerce." Allsup's claim is based almost entirely on the discrepancy between A2K's statements regarding its interest in entering the market in 2001 and 2002 and its later statements denying it ever entered the market. To substantiate its claim, Allsup alleges A2K did not produce evidence it actually could be operational; however, Allsup's own expert testified A2K had the capacity to provide such a program.

---

[2]This litigation involved Allsup's claims against another former employee for breach of a non-compete agreement.

## II

We review de novo the district court's grant of summary judgment. Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence in the light most favorable to Allsup, the non-moving party. Lester E. Cox Med. Ctr., Springfield, Mo. v. Huntsman, 408 F.3d 989, 992 (8th Cir. 2005). However, to warrant reversal, Allsup "must show the existence of facts on the record which create a genuine issue." Id. (citing Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995)).

Under the Lanham Act, "[a]ny person who, . . . in connection with any . . . services, . . . uses in commerce any . . . false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . [of] another person's . . . services . . . shall be liable . . . by any person who believes . . . to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B). The purpose of this Act is "to protect persons engaged in commerce against false advertising and unfair competition." Am. Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390 (8th Cir. 2004) (quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir.1998)).

To establish a claim for false advertising, Allsup must establish the following: 1) A2K made false statements of fact about its own product; 2) A2K's statement "actually deceived" or had the "tendency to deceive a substantial segment" of its audience; 3) the deception created was material; 4) A2K caused the false statement to enter interstate commerce; and 5) Allsup has been or is likely to be injured as a result of A2K's alleged false advertisement. Id. (citing United Indus. Corp., 140 F.3d at 1180). Failure to establish any one element of the prima facie case is fatal to the

claim. Id. Under the first element, a statement is false if it is either 1) literally false, or 2) literally true or ambiguous, but renders a "false impression" when viewed in context. Id. A literally false statement can be determined as a matter of law, but whether a statement is misleading is considered a matter of fact. Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002).

Allsup rests its case on four statements made by Binder during the bidding processes. These statements are: 1) "We have the internal capability and software available to provide the [overpayment recovery] service"; 2) "We will be fully prepared to initiate the service prior to [LTD carrier's] start date. The authorizations, communications, and processes have been scripted and are in our systems directories awaiting activation"; 3) "I am attaching copies of [A2K's] Pre-Authorized Withdrawal consent. . . . We are extremely careful to ensure the program is voluntary, and to not specifically state in any consent signed by the claimant that . . . retroactive benefits must be repaid" to the LTD carrier; and 4) "Attached is the 'Preauthorized Withdrawal' consent required to facilitate the Overpayment Recovery Service through the utilization of the PC ACH software. We do have the software and have used the service on a limited basis."[3]

All of these statements relate to A2K's intention of entering the "overpayment recovery" market in late 2001 and early 2002. Although A2K later changed its mind about entering the market, its statements in mid-2002 about never having provided this service and having no future plans to provide the service do not render the previous four statements false. Allsup has brought forward no evidence proving the falsity of these statements about A2K's capacity and willingness to enter the market.

_____

[3]Although not argued by the parties, this reference to having used "the service on a limited basis" appears to describe A2K's experience with PC ACH software, rather than experience in the "overpayment recovery" market.

As such, the district court did not err in determining the statements were not literally false.

Even if the statements are not literally false, we must still determine if they are false in context. "Statements that are literally true or ambiguous but which nevertheless have a tendency to mislead or deceive the consumer are actionable under the Lanham Act." United Indus. Corp., 140 F.3d at 1182 . Viewing these statements in context only bolsters A2K's contention they concerned its ability to provide "overpayment recovery" services in the future after securing a contract from a LTD carrier. The statements at issue were made in e-mail messages and bid proposals to specific LTD carriers about A2K's capacity to provide services on a date to be determined later. At no point did A2K represent it had already entered the market or was currently providing the services at issue. Furthermore, Allsup's own expert testified A2K could have entered the market if it secured a contract from a LTD carrier. This evidence, coupled with A2K's production of its preliminary preauthorized withdrawal forms, demonstrates the veracity of A2K's statements. Because Allsup cannot prove the statements are either literally false or false in context, it has failed to demonstrate a prima facie case of false advertising under the Lanham Act. Accordingly, we affirm the district court's grant of summary judgment to A2K, Smith, and Binder.

_____