CARGILL, INCORPORATED, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY and Federal Insurance Company, Defendants.

Civ. No. 4-81-625.

United States District Court,
D. Minnesota,
Fourth Division

Feb. 5, 1982.

John D. Levine, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., G. Wynn Smith, Jr., Mary Lee Wolff and Patrick M. Ardis, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for plaintiff.

Frederick A. Collatz, St. Paul, Minn., for Hartford Acc. & Indem. Co.

James F. Roegge, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., Robert B. Budelman, Jr., Bigham, Englar, Jones & Houston, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Cargill, Incorporated (Cargill) brings this action against defendants Hartford Accident and Indemnity Company (Hartford) and Federal Insurance Company (Federal), seeking recovery under two separate policies of insurance. Cargill alleges it is entitled to recovery under both policies on the basis of losses incurred by Tradax Financial & Leasing, Ltd. (TFL), an English affiliate of Cargill, as a result of certain acts of Ronald Graham and Arthur Thompson, employees of TFL. Cargill seeks judgment of $5,000,000 under each of the policies. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

Federal has filed motions to (1) dismiss the action on the ground of *forum non conveniens*, (2) dismiss for failure to state a claim upon which relief can be granted, (3) stay this action pending outcome of litigation against Cargill filed by Federal in England, or (4) stay this action until Cargill abides by its obligations under its insurance policy with Federal.

Cargill has filed motions to (1) preliminarily enjoin Federal from proceeding with the English litigation against Cargill and (2) further enjoin Federal from instituting any other proceedings in any other court with regard to the issues which are the subject matter of the complaint.

*Factual Background*

The facts relevant for purposes of this motion appear to be as follows. At different times Cargill took out insurance policies with Hartford and Federal. The Hartford policy insures Cargill and other insureds under the policy against losses incurred through fraudulent or dishonest acts of a Cargill employee or an employee of other insureds. It covers losses sustained on or before June 28, 1978, which were discovered on or before noon, June 28, 1979. The Federal policy covers losses caused by theft

of employees of an insured. It became effective at 12:01 a.m., June 28, 1978, and covers losses to insureds sustained or discovered on or after June 28, 1978. The Federal policy excludes certain losses covered under prior policies. Both policies were negotiated and agreed to by Cargill in Minnesota and were delivered to Cargill in Minnesota.

Cargill alleges that TFL sustained losses due to employee dishonesty occurring primarily in England between 1973 and April, 1979, and has submitted claims to both Hartford and Federal. It appears that Cargill has a majority interest in TFL's stock.[1] Hartford denies liability on a number of grounds, including the ground that losses allegedly covered by the policy were not reported to it in a timely manner.

After securing an extension, Cargill submitted proof of loss to Federal, but Federal requested more information. Following a number of disputes between the parties concerning the amount of documentation to be submitted by Cargill and the place at which it was to be submitted, negotiations between Cargill and Federal broke down. Then, approximately five days before the contractual period to sue expired, the parties filed almost simultaneous lawsuits related to coverage under the Federal policy. Federal filed a declaratory judgment suit against Cargill and TFL in the High Court of Justice in London, England, on September 25, 1981. On the same day Cargill brought the action now before the court. There is evidence that Hartford is not subject to the jurisdiction of the English court.

*Discussion*

1. *Federal's Motion to Dismiss under the Doctrine of Forum Non Conveniens*

■ In ruling on a motion to dismiss for *forum non conveniens*, the court first must determine whether there is an alternative forum and if so, whether the presumption in favor of plaintiff's choice of forum has been overcome by the private and public interest factors presented. *Piper Aircraft Co. v. Reyno,* —— U.S. ——, ——, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981).

In the situation before the court there exists another forum in which two of the parties here are present. However, since Hartford cannot be joined there, and it is important to Cargill to have a forum in which all parties can be joined (see discussion *infra*), it could be argued that no adequate alternative forum exists. Whether these facts meet the test of those rare circumstances where the other forum is so inadequate as not to present an alternative (*Id.* at n. 22) need not be decided since an analysis of the private and public interest factors leads to the conclusion that the motion to dismiss must be denied.[2]

■ Private interest factors include (1) relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining willing witnesses, and (3) all other practical problems that make a trial expeditious and inexpensive. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Unless the balance is strongly in a defendant's favor, a plaintiff's choice of forum should rarely be disturbed. *Piper Aircraft Co. v. Reyno,* —— U.S. at ——, 102 S.Ct. at 264; *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843; *see also Koster v. Lumbermen's Mutual Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947).

■ Public interest factors include (1) avoiding adding to the administrative difficulties of courts with congested calendars, (2) avoiding the imposition of the burden of jury duty upon people of a community which has no relationship to the litigation, (3) promoting the local interest in having localized controversies settled at home, and (4) avoiding problems of conflict of laws

---

1. Cargill apparently owns 70 percent of the common stock of Tradax Internacional, S. A., which owns 83 percent of the common stock of Tradax Export, S.A., which owns 100 percent of the common stock of Tradax England, Ltd., which, in turn, owns 100 percent of TFL stock.

2. The same result would be reached applying state law. *See Hague v. Allstate Insurance Co.,* 289 N.W.2d 43, 46 (Minn.1978).

and the need for the court to apply foreign law. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508–509, 67 S.Ct. at 843. The relative strength of the forums' interest in the litigation should also be considered. *See Piper Aircraft Co. v. Reyno*, —— U.S. ——, ——, 102 S.Ct. 252, 268, 70 L.Ed.2d 419 (1981).

█ Certain factors of private interest favor Federal, but not to the extent that Cargill's choice of forum should be disturbed. The relative ease of access to proof does not weigh heavily for either party. The contracts of insurance were negotiated and signed by Cargill in Minnesota and delivered here. Although Federal alleges that much documentary proof may remain in England, a great volume of Cargill's documents are located in the United States.

It appears that Federal may not be able to produce TFL employees to testify before this court; however, at this stage it is unclear who will actually be called to testify. Moreover, English law provides a means similar to deposition for securing testimony. Federal has pointed to a large number of potential witnesses, many of whom reside in England, but has avoided stating to the court that it intends to rely on any particular testimony in presenting its case. It is not clear, in fact, whether Federal intends to base any substantial portion of its case on evidence of the events taking place in England. On the other hand, Cargill has designated six witnesses, five of whom reside in the United States. While Federal need not produce affidavits as to trial testimony on this motion, *Piper Aircraft Co. v. Reyno*, —— U.S. at ——, 102 S.Ct. at 266, the court must assess the factor of access to witnesses by weighing the information it has available. *Id.*

Federal also argues that it is prejudiced because it cannot join TFL employees as defendants in this action because this court lacks personal jurisdiction over them. It has not yet, however, joined those employees in the English action and very well might never do so.

There are a number of other factors indicating that the balance of convenience weighs in Cargill's favor. Cargill's American counsel has spent considerable time gaining familiarity with the case and could represent them here, but not in the English action. More importantly, it is only in this forum that Cargill's claims against both Hartford and Federal may be joined in one action. The claims against both companies are likely to have many of the same operative facts, including when Cargill discovered the alleged loss, and the coverage of each of the policies. It is clearly more convenient for Cargill to be able to present these facts once in this forum than both here and in England. Moreover, Cargill would face the risk of inconsistent results if it were required to present its claims against Federal in England and its claims against Hartford here. It is possible, for example, that the English court could find certain losses covered by Hartford and that Federal was not liable to the extent of Hartford's coverage. Such a decision would not be binding on Hartford because it is not subject to the jurisdiction of the English court; despite such a decision by the English court, the jury in this court could find Hartford not liable. The possibility of such an inconsistency would be highly prejudicial to Cargill.[3]

The public interest factors do not balance in Federal's favor. Federal argues that because the acts of the employees at issue under its policy occurred in England, England has the closest relationship to the matter. As noted, however, Cargill, a Minnesota citizen, negotiated and agreed to the policy in Minnesota, and the policy was delivered to it here. The issues in this litigation deal with whether there is coverage under the respective insurance policies, and Minnesota has a very strong interest in the litigation.

Federal further argues that the real party in interest is not Cargill but TFL, an English entity. There is, however, evidence

---

**3.** Federal contends that because the Hartford policy covers fraud and dishonesty and the Federal policy covers only employee theft, the policies do not overlap. This is an issue not ripe for determination. It cannot be said at this time that there is no overlap.

that Cargill has a substantial ownership interest in TFL stock and that TFL is winding down its operations. The first named insured in the Federal policy is Cargill, and the policy states that only the first named insured has any right to make a claim under the policy.

It is not clear whether English law will apply to any issues in the case, and it has not been disputed that Minnesota law will apply to interpretation of the policies. At this stage it is unclear what issues Federal will actually raise or that English law would be used to define theft, for example.

Judicial efficiency will be served by having the trial of this matter in this court where both defendant insurance companies can be joined since it appears that some of the proof in these matters will overlap. Discovery and trial of these issues can take place in this forum, rather than requiring two forums to litigate the same issues.

2. *Cargill's Motion for a Preliminary Injunction*

Cargill has filed a motion to preliminarily enjoin Federal from proceeding with the English action and to further enjoin Federal from instituting proceedings in any other court with regard to the issues which are the subject matter of the complaint in this action.

■ A federal court may, in the exercise of its discretion, control its own proceedings by enjoining parties from bringing proceedings in other courts, including courts of foreign jurisdictions, although this power should be used sparingly. *See Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 855 (9th Cir. 1981); *Bethell v. Peace,* 441 F.2d 495, 498 (5th Cir. 1971); *Medtronic Inc. v. Catalyst Research Corp.,* 518 F.Supp. 946, 955 (D.Minn. 1981). The threshold question is whether the parties are the same in both actions, the issues are the same, and resolution of the first action will be dispositive of the action to be enjoined. 518 F.Supp. at 955. A foreign action should then be enjoined when it would (1) frustrate a policy of the forum issuing the injunction, (2) be vexatious or oppressive, (3) threaten the issuing court's in rem or quasi-in-rem jurisdiction, or (4) where the proceedings prejudice other equitable considerations. *Seattle Totems Hockey Team, Inc. v. National Hockey League,* 652 F.2d 852, 855 (9th Cir. 1981). An injunction is in order when adjudication of the same issue in two separate actions will result in unnecessary delay, substantial inconvenience and expense to the parties and witnesses, and where separate adjudications could result in inconsistent rulings or a race to judgment. 652 F.2d at 856.

■ The threshold considerations for enjoining Federal's English action have been met. Both Cargill and Federal are involved in that action, the issue in both is coverage under the policy, and disposition of this action will resolve the issue in that action. For the reasons stated in the discussion of *forum non conveniens,* the convenience of the parties, as well as the interest of judicial economy, weigh in favor of the issuance of the injunction. It would be vexatious to Cargill and a waste of judicial resources to require adjudication of Federal's liability in two separate forums. Separate adjudications could further prejudice Cargill by the risk of inconsistent results and a possible race to judgment.

Accordingly, Federal should be enjoined from pursuing its English action.

■ Cargill has failed to show a present need for enjoining Federal from instituting other proceedings relative to the matters at issue here. There is no indication that Federal would seek to circumvent this court's orders, and injunctive relief is not appropriate where the threat of harm is merely speculative. *Marshall v. Truman Arnold Distributing Co., Inc.,* 640 F.2d 906, 910 (8th Cir. 1981); *Independent School District No. 276 v. Gabbert,* Civil No. 4–81–219 (D.Minn. 1981).

3. *Federal's Motion to Dismiss on Other Grounds*

■ Federal moves to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted in

that Cargill failed to comply with the terms and conditions of the Federal policy and in that TFL is not a named insured under the Federal policy. Because matters outside the pleadings have been presented, the court will consider Federal's motion as one for summary judgment. *See* Rule 12(b), Federal Rules of Civil Procedure.

In support of the first ground for dismissal, Federal alleges that Cargill violated the Federal policy's cooperation clause. Under that clause, an insured is required to submit to examination under oath and produce records at "such reasonable times and ... places as [Federal] shall designate." There is evidence that Cargill refused to supply various documents requested by Federal and refused to provide various documents in England as requested by Federal. However, Cargill has provided evidence that it spent thousands of hours in meeting document requests and argues that many of Federal's requests were unreasonable.

 Standards of good faith apply to both parties to an insurance contract. *Sargent v. Johnson*, 551 F.2d 221, 232 (8th Cir. 1977). Here there is a disputed issue of material fact relative to the good faith of the parties in taking the actions they did, which dictates that the motion for summary judgment be denied. *See* Rule 56; *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).

In support of its second ground for dismissal, Federal argues that because TFL was Cargill's affiliate it is not covered under the policy which covers only "subsidiary corporations."[4] The policy language is ambiguous in that it refers to "any subsidiary corporation *or corporations now existing* ..." [emphasis added]. It is not clear whether the portion of the clause after the disjunctive refers to all corporations or only subsidiary corporations. Moreover, it is not clear that the policy uses the term "subsidiary" in a technical sense.

Ambiguous terms are to be construed against the drafter. *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1354 (8th Cir. 1980). In addition, because of this ambiguity, extrinsic evidence is admissible to allow the court to determine the meaning of ambiguous terms. 625 F.2d at 1353. Cargill has submitted evidence that there were negotiations between it and Federal at which it was understood the coverage of the Federal policy was to be as great as that under the previous Hartford policy. There is also evidence that TFL was covered under the Hartford policy. Thus, the coverage of the policy is a disputed issue of material fact, and summary judgment is inappropriate. *See* Rule 56.

### 5. *Federal's Motions to Stay*

In light of the above rulings, the court need not address Federal's motion to stay this action until the English action is completed. Federal also seeks to stay this action until Cargill complies with the cooperation clause of the policy.

As previously noted, there is conflicting evidence as to the good faith of each of the parties in taking the actions they did in requesting, producing, or refusing to produce proof of the loss. However, it appears that cooperation between the parties has now totally broken down. Accordingly, the court will order Cargill to comply with Federal's reasonable requests to examine witnesses, for the production of documents, books, and records of TFL, and otherwise comply with the cooperation clause. The court expects both parties to make a good faith effort to complete this process as quickly as possible.

The court's responsibilities to manage its caseload and move matters to a speedy resolution make any stay of this action impractical. Instead the court will order the parties to submit, by letter, what they believe to be reasonable deadlines for completing discovery and a ready for trial date. In submitting these deadlines, the parties

---

4. The policy states that the named insureds are Cargill, Incorporated and any subsidiary corporation or corporations now existing or hereafter created or acquired, as their respective interests may appear, and Waycrosse, Inc.

should bear in mind the time that will be necessary for completion of the proof of loss process.

## ORDER

Accordingly, based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant Federal Insurance Company's motion to dismiss for *forum non conveniens* is denied.

2. Defendant Federal Insurance Company is enjoined from proceeding with the action filed on September 25, 1981 against Cargill Incorporated and Tradax Financial and Leasing, Ltd. in London, England, until the issues herein have been litigated.

3. Federal Insurance Company's motion to dismiss for failure to state a claim upon which relief can be granted is denied.

4. Federal Insurance Company's motion to stay this action until the outcome of the English litigation is denied.

5. Federal Insurance Company's motion to stay this action until Cargill complies with the Federal policy's cooperation clause is denied.

6. Cargill is to comply with Federal's reasonable requests to examine witnesses, for the production of documents, books, and records of TFL. Both parties are to comply with the Federal policy's cooperation clause and to make a good faith effort to complete the proof of loss process as quickly as possible.

7. All parties to this action, including Hartford Accident and Indemnity Company, are to submit to the court by letter on or before February 25, 1982, what they believe to be reasonable deadlines for completion of discovery and motion practice and when the case should be ready for trial.